HEARD APRIL TERM, 1877.

## FAUST *vs.* THE SOUTH CAROLINA RAILROAD COMPANY.

Where goods delivered by "A" to a common carrier for shipment are seized by the Sheriff in the carrier's possession under an attachment against "B," and the attachment is afterwards released, he, the carrier, is liable under his original contract with "A," and cannot plead the seizure under the attachment as a defense to "A's" action for not having complied with the terms of his contract.

An appeal does not lie for the denial of the Circuit Court to charge that which is purely a matter of fact.

BEFORE MAHER, J., AT BARNWELL, JANUARY, 1876.

This was an action by Angus A. Faust against the South Carolina Railroad Company, in which the plaintiff recovered judgment and the defendant appealed.

To understand the case, it is necessary to publish the whole brief, which is as follows:

"The complaint in this action, filed January, 1875, alleged a delivery of a bale of cotton weighing four hundred and fifty pounds, worth fourteen and a half cents per pound, to defendant about twenty-fifth day of October, 1874, and a negligent carriage by defendant, whereby it was lost.

"The answer filed 22d January, 1875, alleged a non-delivery of the cotton by the defendant, and the special matter stated in the evidence.

"The cause came on for trial before Judge Maher and a jury the 26th January, 1876, and the plaintiff, to maintain the issues on his

part, testified: That on the 21st day of September, 1874, he sent by one Thomas Dunbar to John S. Small, the agent of defendant at Graham's, a bale of cotton weighing about four hundred and fifty pounds, worth fourteen and a half cents per pound, and directed said agent to mark it F. & D., and ship to Wroton & Dowling, cotton factors, Charleston, S. C.; that, although the interest of Dunbar in the bale was one-half, said interest belonged to plaintiff under their contract for advances during the year, and that he had it marked F. & D. to distinguish it from his other cotton, that he might credit said Dunbar with his interest when they settled. That after said cotton was attached he procured an order from the Sheriff, which was proven, for its release, and that when he reached Graham's with the order directed to .W. T. Rice, acting Deputy, not finding him there he left the order with John S. Small, agent of defendant, (in whose depot the cotton was awaiting a release,) and asked him when the Deputy came to give it to him, and when he released it to ship it for him. Small promised him to do so. This was on the 23d October, 1874.

"W. T. Rice testified that as special deputy for the Sheriff he attached the cotton at the depot at Graham's; cotton was marked F. & D. Attachment was a process of foreclosure of lien executed by said Dunbar to Steadman & Turner. Upon attaching the cotton he got permission of the agent to let same remain in defendant's warehouse at his (Rice's) risk, where it remained until the 25th day of October, 1874, at which time witness came to Graham's in the morning, when the agent handed him the Sheriff's order, and gave him the key of the depot to get it, at the same time telling him what Mr. Faust had said about it. Witness went, Mr. Small following on, and placed the cotton on the platform for Mr. Small, and told him he released the attachment, when Turner came up and took possession of it and obliterated plaintiff's mark, and substituted that of Steadman & Turner.

"E. C. Behling testified that he was present when Rice released the cotton from levy and placed it on the platform. Small and Turner were also present. Small received the cotton from Turner.

"For the defense it was shown by John S. Small that he received this cotton from Thomas Dunbar, with a written request from plaintiff to mark and ship for him.

"Witness marked the bale as requested, and made an entry of same on his shipping book. This was on 21st September, 1874.

On the next day the cotton was attached by Rice, Deputy Sheriff, and at his request was placed in defendant's warehouse at his (Rice's) risk. Witness thereupon erased the above mentioned entry on his book. The cotton remained in the warehouse until 25th October, 1874, when witness gave Rice the order for the release of the cotton which the plaintiff had handed him, and the key to put the cotton on the platform for shipment in compliance with his promise. Rice placed the cotton on the platform, and told witness it was released from attachment, and G. W. Turner said he would take it by force if necessary.

"Witness said to Turner: 'I might get into trouble about it.' Turner replied: 'I will stand between you and damages,' and obliterated plaintiff's mark and substituted Steadman & Turner's, for whom witness shipped it.

"Witness upon receiving the cotton from Turner made an entry of same in his book and shipped to Charleston.

"After the attachment witness never received the cotton from plaintiff.

"The ordinary way of delivering cotton for shipment is for a person to place it on the platform, when witness weighs, if necessary, marks it, and makes an entry of same upon his shipping book. Until such entry witness does not consider the cotton in defendant's possession.

"Defendant then produced an agricultural lien from Thomas Dunbar to Steadman & Turner, executed 13th January, 1874, recorded 2d February. Affidavit of G. W. Turner of Dunbar's attempting to defeat the lien. Warrant of seizure by clerk 21st September, 1874. Letter of Rice to Sheriff, showing levy to have been regularly made.

"G. W. Turner testified that at the time of release of said cotton from attachment he accompanied the Deputy to the warehouse, and, upon being informed of what he was going to do, laid claim to the cotton, and immediately after the Deputy took his hands off of it he seized it for himself, claiming it under his lien, and marked it for himself, and upon his threat to carry it away unless agent shipped for him he did so.

"Upon cross-examination it appeared that this lien was given for advances to Dunbar before he went on the plaintiff's place, and nothing was advanced by the lien holders in 1874, or at any time after its date. The consideration of the lien was corn Dunbar was

allowed to retain in a settlement of his lien of 1873, before the date of the lien.

"In reply the plaintiff showed that while the cotton was in the Sheriff's custody Small promised to ship it for him when the levy was lifted.

"Defendant requested the Court to charge the jury:

"1. That after the delivery of the cotton by Faust to the agent of the railroad company the seizure of the cotton under legal process relieved defendant from all liability to Faust on account of its delivery.

"2. That if afterwards the railroad agent received the cotton in the ordinary way from Turner, the defendant is not liable to Faust.

"3. That the railroad company is not liable to Faust in any event unless it received the cotton from him in the ordinary way.

"4. That the deputy Sheriff delivered the cotton to Turner instead of Faust.

"5. That if the railroad agent accepted a delivery of the cotton from Faust, knowing of the attachment, it is for the jury to consider whether or not it was a willful tort on Small's part, and, if so, defendant is not liable to Faust."

All the instructions were denied except the first.

*Skinner*, for appellant.

*Gantt & Simms*, contra.

June 15, 1877. The opinion of the Court was delivered by

WILLARD, C. J. Plaintiff, by his agent, Dunbar, delivered a bale of cotton to Smalls, the agent of defendants, for shipment to Charleston. Subsequently it was seized in the hands of defendants by the Sheriff, under an attachment, as the property of Dunbar. This attachment was subsequently released, the property being left at such release in the defendants' hands. Subsequently to this, defendants' agent permitted Turner to take possession of it as the property of Dunbar, claiming to have an agricultural lien upon it. Defendants' agent thereupon received it at the hands of Turner and shipped it on his account to Charleston. The jury found a verdict for plaintiff, and the defendants ask to have that verdict set aside on exceptions taken to the charge of the Court.

The first exception is to the second request to charge, namely, "that if afterwards the railroad agent received the cotton in the ordinary way from Turner, the defendant is not liable to Faust."

The meaning of this is, that upon the removal of the attachment, the goods being still in the defendants' hands, they were under no obligation to ship the cotton under the original delivery to them for that purpose. This is not correct. The acceptance of the cotton from the plaintiff's agent for the purpose of shipment bound them by the terms of a contract, which could not be dissolved by the act of the defendants alone. If the cotton had been taken entirely from their custody by the Sheriff, and if, after the attachment had been released, they had refused to receive or ship the cotton, the original contract to ship for account of the plaintiff might have been at an end. But, electing through their agent to retain the goods after their release by the Sheriff, they remained bound by the original contract with the plaintiff. This precludes the correctness of the proposition under consideration.

The next request to charge refused was as follows: "That the railroad company is not liable to Faust in any event, unless it received the cotton from him in the ordinary way." The meaning of this request is not clear. It implies that there is only one way in which the defendants could have become bound to the plaintiff as carrier of goods, but does not disclose what that way is.

This request is indefinite and calculated to mislead the jury, and is, in point of fact, untrue, for the defendants may assume the obligation of carriers of goods in a variety of ways. The contract may be consummated by different words and different acts, and may be implied when not in form expressed.

The next request refused is as follows: "That the Deputy Sheriff delivered the cotton to Turner and not to Faust." The evidence would appear to be otherwise; but, at all events, that is purely a matter of fact, about which the Court could not be required to charge the jury.

The last request refused is as follows: "That if the railroad agent accepted a delivery of the cotton from Faust knowing of the attachment, it is for the jury to consider whether or not it was a willful act on Smalls' part; and, if so, defendant is not liable to Faust."

No foundation appears in the evidence warranting any request on this subject. It is not charged, and does not appear, that any

wrong was perpetrated by the original acceptance of the goods from plaintiff's agent; therefore, the effect of such a supposititious case need not be considered. The ground on which the verdict rests is the voluntary relinquishment of the cotton to Turner by the defendant's agent, while it was held as the property of Faust and under contract for shipment in his behalf, and it is not for the defendants to affirm any wrong that may have been done to Turner, if any there was, by the act of Faust in delivering the cotton to them for shipment.

The requests are properly refused and the appeal must be dismissed.

*McIver*, A. J., concurred.